UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ERICKA RICHARDSON, LUIS A. SILVA,

    Plaintiffs,

v.

COVERALL NORTH AMERICA, INC., SUJOL, LLC, ABC CORPS. 1-10, JANE & JOHN DOES 1-10,

    Defendants.

Civil Action No. 18-532 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendants Coverall North America, Inc. ("CNA") and Sujol, LLC d/b/a Coverall of Southern, NJ's ("Sujol") (collectively, "Defendants") Joint Motion to Stay this Action Pending Mediation and Arbitration. (ECF No. 12.) Plaintiffs Ericka Richardson ("Richardson") and Luis Silva ("Silva") (collectively, "Plaintiffs") filed opposition (ECF No. 17) and Defendants replied (ECF No. 22).[1] Plaintiffs also submitted supplemental authority (ECF Nos. 33, 37) to which Defendants responded (ECF No. 35) and provided additional supplemental authority (ECF No. 34). The Court heard oral argument on June 22, 2018 (ECF No. 39) and the parties filed supplemental post-argument submissions (ECF Nos. 41, 42, 43). The

---

[1] Also pending before the Court is Plaintiffs' Motion for Leave to File a Sur-Reply Brief in Further Opposition to Defendants' Joint Motion to Stay this Action Pending Mediation and Arbitration. (ECF No. 27.) This motion is GRANTED. The Court will consider all arguments before the Court (*see* ECF Nos. 27 and 30) that it finds relevant to the resolution of the motion.

Court has carefully considered the parties' positions and, for the reasons set forth below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I. Background

This putative class action arises out of two purported Franchise Agreements that Richardson and Silva entered into with Sujol. CNA is not a party to either Agreement. (Defs.' Moving Br. 9-12, ECF No. 12-1; Defs.' Reply Br. 5, ECF No. 22.)

According to Plaintiffs, Defendants employ workers to provide cleaning services across the country. (Compl. ¶ 10, ECF No. 1-2.) The workers are required to sign franchise agreements that classify them as independent contractors. (*Id.* ¶ 11.) Plaintiffs allege, however, that Defendants exercise such significant control over the workers that they are actually employees. (*Id.* ¶ 14.) For example, Plaintiffs allege that Defendants oversee their work, negotiate directly with customers, reassign business as Defendants see fit, and retain the right to terminate employees. (*Id.* ¶ 14.) Plaintiffs filed this lawsuit in New Jersey Superior Court alleging that they are employees—not independent contractors—and are therefore entitled to the protections of the New Jersey Wage Payment Law ("NJWPL"). Plaintiffs claim that Defendants misclassified them as independent contractors, charged them for a job, and took unlawful deductions from their wages in violation of N.J.S.A. § 34:11-4.4 *et. seq.* (Compl. ¶ 35.) Defendants removed the action to this Court on January 12, 2018 pursuant to the Class Action Fairness Act (ECF No. 1) and filed the instant motion to "stay pending mediation and arbitration." (ECF No. 12.)

Defendants argue that because the Agreements in question contain mandatory mediation and arbitration provisions and class-action waivers, the Court should stay this matter until the conclusion of individual arbitration. (Defs.' Moving Br. 1-3, ECF No. 12-1.) Defendants assert that the issue of arbitrability should be determined by an arbitrator pursuant to the terms of each

2

Agreement (*id.* at 4-6), but if the Court determines it should decide the threshold issue of arbitrability, it should stay the action pending mediation and arbitration (*id.* at 7).

In response, Plaintiffs argue that no valid agreement exists because the agreement required three signatures and "Coverall" never signed. (Pls.' Opp'n Br. 8-11, ECF No. 17.) Additionally, Plaintiffs argue that even if a valid agreement exists, the Court should determine arbitrability because the Silva Agreement does not contain a delegation clause and the Richardson Agreement's arbitration clause is unconscionable. (*Id.* at 12, 17.) Finally, Plaintiffs argue that their statutory NJWPL claims are outside the scope of the arbitration agreements, as their Agreements do not clearly cover these claims. (*Id.* at 27.)

## II. <u>Legal Standard</u>

When a party files suit in district court "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. If a party, in accordance with its motion to compel arbitration, requests a stay, the court "[is] obligated under 9 U.S.C. § 3 to grant the stay once it decide[s] to order arbitration," and may not, instead, dismiss the matter. *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004).

In order to compel arbitration, a court must determine that: "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citations omitted). Courts use state law principles governing contract formation to determine the existence of an agreement. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). A court seeking to determine whether a particular dispute falls within the scope of an arbitration agreement "is confined to

3

ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) (citations omitted). Because federal policy favors arbitration, all doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration. *Id.*

**III.  Discussion**

    **A.**    **Validity of Agreements**

Plaintiffs argue that no valid agreement exists because of the lack of a necessary signature. (Pls.' Opp'n Br. 11.) Specifically, Plaintiffs refer to a provision in the Franchise Agreements, drafted by Defendants, that states:

> AGREEMENT SHALL NOT BE VALID UNLESS SIGNED BY (i) FRANCHISEE, (ii) AN AUTHORIZED REPRESENTATIVE OF COVERALL'S REGIONAL OFFICE; AND (iii) A CORPORATE OFFICER AT COVERALL'S CORPORATE OFFICE.

(Silva Agreement 25,[2] ECF No. 12-3 (emphasis in original).)[3] On the signature page of each Agreement, a representative of Sujol signed in the signature block designated for a representative of Coverall's Regional Office; however, no signature appears in the signature block designated for a Coverall corporate officer. (Silva Agreement 25; Richardson Agreement 25.) Defendants

---

[2] The Court cites to the pages of the Silva and Richardson Agreements using the pagination automatically generated by the ECF system.

[3] The Richardson Agreement contains the same substance but slightly different language:

> THIS AGREEMENT SHALL NOT BE VALID UNLESS SIGNED BY (i) FRANCHISEE; (ii) AN AUTHORIZED REPRESENTATIVE OF COVERALL'S REGIONAL SUPPORT CENTER; AND (iii) AN OFFICER OF COVERALL.

(Richardson Agreement 25, ECF No. 12-4 (emphasis in original).)

respond that the Agreements actually define "Coverall" as "Sujol." (Defs.' Reply Br. 5.)[4] According to Defendants, because the single signature of John Landolfi, President and CEO of Sujol, is actually sufficient for both signature lines (because Coverall corporate just meant Sujol corporate), his signature was sufficient to satisfy the requirement for both (ii) and (iii) of the provision. (*Id.*) In other words, Defendants argue that the Agreements do not explicitly require two distinct signatories, only the signature of an authorized regional representative and the signature of a corporate officer, who may be one and the same person. (*Id.*) In any event, Defendants argue that even if the Court were to find three signatures necessary to bind the parties to the Agreements, Plaintiffs waived their ability to challenge the Agreements on this ground now, after years of performing under the contracts and receiving the benefits of the Agreements. (*Id.* at 6.)

The Court finds Defendants' argument persuasive. Both contracts clearly define the term "Coverall" as "Sujol, LLC" (Defs.' Moving Br. Ex. A at 2, ECF No. 12-3; Ex. B at 2, ECF No. 12-4), as acknowledged by Plaintiffs' briefing (Pls.' Opp'n Br. 6 n.2). Contractual definitions establish the meaning of terms within a contract. 5-24 *Corbin on Contracts* § 24.8. As the parties do not appear to contest that Sujol's President and CEO is a "corporate officer" and an "authorized representative" of Sujol's regional offices (Decl. of John Landolfi ¶¶ 1-2), the Court finds that the necessary signatures appear on the Agreements.[5]

---

[4] "[B]oth agreements define the term "Coverall" to mean Defendant Sujol, *not* Defendant CNA. Therefore, when the Franchise Agreements refer to signatures from "Coverall's" regional and corporate offices, they are referring to Sujol, not CNA." (Defs.' Reply Br. 5 (internal citations omitted).)

[5] Further, even if a mandatory signature was missing, the Court agrees that Plaintiffs' performance would have waived their ability to challenge the signature requirement now. *See In re Score Bd., Inc.*, 238 B.R. 585, 592 (D.N.J. 1999) (citing *Selective Builders, Inc. v. Hudson City Sav. Bank*, 349 A.2d 564 (N.J. Super. Ch. Div. 1975)).

B.  **Scope of Arbitration**

Having found the existence of an Agreement, the threshold question is "whether the Court, as opposed to an arbiter, should determine the scope of the arbitrability provisions." *Espinal v. Bob's Discount Furniture, LLC*, No. 17-2854, 2018 WL 2278106, at *5 (D.N.J. May 18, 2018). Defendants argue that both agreements delegate this responsibility to the arbitrator. (Defs.' Moving Br. 6, ECF No. 12-1; Defs.' Reply Br. 1-4, ECF No. 22.) Plaintiffs disagree and argue that the Silva Agreement does not have a delegation clause and that the Richardson Agreement's delegation clause is unconscionable. (Pls.' Opp'n Br. 12-25.)

1.  **Silva Agreement**

    a.  Delegation of Arbitrability to the Arbitrator

"Although the FAA expresses a national policy favoring arbitration, the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability." *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1177 (N.J. 2016) (citation omitted). "[T]o overcome the judicial-resolution presumption, there must be 'clea[r] and unmistakabl[e]' evidence 'that the parties agreed to arbitrate arbitrability.'" *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)).

The Silva Agreement reads:

> all controversies, disputes or claims between Coverall . . . and Franchisee . . . arising out of or related to the relationship of the parties, this Agreement, any related agreement between the parties, and/or any specification, standard or operating procedure of Coverall, including those set forth in the Coverall Policy and Procedure Manual . . . shall be submitted promptly for arbitration.
>
> (1) Arbitration shall be subject to the Federal Arbitration Act and, except as otherwise provided in this agreement or agreed upon by the parties, the then current Rules of the American Arbitration Association for Commercial Arbitration.
>
> . . .

(Silva Agreement ¶ 21(A).)

Defendants argue that the reference to "the then current Rules of the [AAA] for Commercial Arbitration" requires that arbitrability be resolved by an arbitrator. (Defs.' Moving Br. 5.) Plaintiffs, however, argue that under *Morgan*, the incorporation of these rules does not clearly and unmistakably delegate arbitrability to the arbitrator. (Pls.' Opp'n Br. 13.)[6] The Court agrees.

Defendants emphasize language from the Third Circuit where the Court, without addressing this issue, noted that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [American Arbitration Association] rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763 (3d Cir. 2016) (citations omitted). As a district court within this Circuit noted, however, in evaluating the Third Circuit's statement, "this apparent consensus among the circuits is not as clear as it seems." *Allstate Ins. Co. v. Toll Bros., Inc.*, 171 F. Supp. 3d 417, 427-29 (E.D. Pa. 2016). Not only is this an open question in our Circuit, "[n]early every circuit to have addressed the issue . . . addressed the question in the context of arbitration agreements entered into by organizations, not unsophisticated individuals." *Id.* (collecting cases). This has caused splits among the district courts within circuits that have "resolved" the issue because the courts are unsure of how to treat such a reference in the context of unsophisticated parties. *Id.* (discussing split among district courts in Ninth Circuit).

---

[6] Plaintiffs also argue that the Richardson Agreement is unenforceable because it violates the National Labor Relations Act. (Pls.' Opp'n Br. 26, ECF No. 17.) The Supreme Court, however, has since resolved this issue in contradiction with Plaintiffs' position, rendering the argument moot. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018).

7

Other Circuits have expressed doubt about their own decisions when it comes to unsophisticated parties. Notably, the First Circuit, *when evaluating a Coverall Franchise Agreement*, expressed doubt that a cross-reference to the rules of the American Arbitration Association is clear and unmistakable evidence that the parties intended to arbitrate disputes over arbitrability where the plaintiffs were alleged to be "far from sophisticated business men and women." *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 12 (1st Cir. 2009). While the First Circuit felt limited by precedent ("[i]f the matter were completely open in this circuit, we are not certain of the outcome"), this Court is not so constrained. *Awuah*, 554 F.3d at 10-11.

The Court finds *AllState* persuasive. A "cross-reference to a set of arbitration rules containing a provision that vests an arbitrator with the *authority* to determine his or her own jurisdiction does not automatically constitute clear and unmistakable evidence that the parties intended to arbitrate threshold questions of arbitrability—at least where those parties are unsophisticated." *Allstate Ins. Co.*, 171 F. Supp. 3d at 428 (emphasis added) (footnote omitted). This is not the type of clear and unmistakable evidence required to effectively delegate the issue of arbitrability. As the *AllState* court noted, it is already a difficult proposition to find that a boilerplate arbitration clause is "clear and unmistakable evidence of an unsophisticated party's intentions." *Id.* at 429 (footnote omitted). To allow the boilerplate to incorporate another forty pages of arbitration rules "is tantamount to inserting boilerplate inside of boilerplate." *Id.* "[T]o conclude that a single provision contained in those rules amounts to clear and unmistakable evidence of an unsophisticated party's intent would be to take 'a good joke too far.'" *Id.* (citing *Campbell Soup Co. v. Wentz*, 172 F.2d 80, 83 (3d Cir. 1948)). "[S]ilence or ambiguity in an agreement does not overcome the presumption that a court decides arbitrability," *Morgan*, 225 N.J. at 304, and the Court finds this cross-reference to the AAA rules to be exactly the type of

ambiguity that is insufficient to overcome the presumption. As to the Silva Agreement, therefore, the Court must determine the issue of arbitrability.

b. Scope of Arbitration Provision

The Court must next determine whether Silva's statutory claims fall within the scope of the arbitration provision. The Third Circuit recently articulated a three-step test to determine the arbitrability of New Jersey statutory claims. *Moon v. Breathless Inc.*, 868 F.3d 209, 214 (3d Cir. 2017). In *Moon*, the Third Circuit analyzed three New Jersey Supreme Court cases to determine the arbitrability of the plaintiff's statutory claims.[7] The Agreement: (1) "must identify the general substantive area that the arbitration clause covers"; (2) "must reference the types of claims waived by the provision"; and (3) "must explain the difference between arbitration and litigation" so that

---

[7] The Third Circuit in *Moon* analyzed three decisions from the New Jersey Supreme Court that interpreted arbitration agreements and their scope. In *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 773 A.2d 665, 672 (N.J. 2001), the New Jersey Supreme Court found that an arbitration provision in an employment contract covering "any controversy or claim arising out of, or relating to, this Agreement or the breach thereof" was insufficient to cover plaintiff's statutory claims under the New Jersey Law Against Discrimination. *Id.* at 668, 672. The court found the lack of reference to statutory claims and the language limiting the scope to claims "arising out of or related to this agreement" was particularly relevant to its finding that the plaintiff did not clearly agree to arbitrate statutory claims. *Id.* On the other hand, the following year, in *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 883 (N.J. 2002), the New Jersey Supreme Court found that statutory claims were within the scope of an arbitration agreement that read, "I AGREE TO WAIVE MY RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING RELATED TO MY EMPLOYMENT WITH [EMPLOYER]. I UNDERSTAND THAT I AM WAIVING MY RIGHT TO A JURY TRIAL VOLUNTARILY AND KNOWINGLY, AND FREE FROM DURESS OR COERCION." *Id.* at 875. The court found that plaintiffs' statutory claims were subject to arbitration because the contract contained no language limiting the scope to disputes about the agreement and the wording provided sufficient notice that the statutory claims would be resolved through arbitration. *Id.* at 883-84. Most recently, in *Atalese v. U.S. Legal Services Group, L.P.*, 99 A.3d 306, 315 (N.J. 2014), a dispute between a customer and a service provider, the New Jersey Supreme Court reiterated the prior holdings and found that an arbitration agreement covering claims "related to this Agreement or related to any performance of any services related to this Agreement" did not establish that plaintiff agreed to arbitrate statutory claims because "the wording of the service agreement did not clearly and unambiguously signal to plaintiff that she was surrendering her right to pursue statutory claims in court." *Id.* at 310, 316.

9

it clearly and unambiguously establishes "that there is a distinction between resolving a dispute in arbitration and in a judicial forum." *Id.* (internal citations omitted). "[T]he clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." *Id.* (quoting *Atalese*, 99 A.3d at 315-16).

Plaintiffs argue that the Silva Agreement is silent as to statutory claims and, therefore, Silva's claims cannot be submitted for arbitration. (Pls.' Opp'n Br. 27.) Additionally, Plaintiffs argue that the Silva Agreement fails to explain what arbitration is under *Atalese*. (*Id.* at 31.) Defendants respond that the plain language of the agreement encompasses Plaintiffs' statutory claims and that the Federal Arbitration Act ("FAA") preempts the New Jersey state law as it applies to arbitration agreements. (Defs.' Reply Br. 11.)

Defendants rely on *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct. 1421 (2017), to argue that the New Jersey requirements impermissibly restrict arbitration provisions. In *Kindred*, the Supreme Court invalidated a Kentucky law that limited the ability of a power of attorney to enter into an arbitration agreement. Under the law, "a power of attorney could not entitle a representative to enter into an arbitration agreement without *specifically* saying so." *Kindred*, 137 S. Ct. at 1426 (emphasis in original). The Supreme Court found that the law discriminated against arbitration agreements because they were not "on equal footing with all other contracts." *Id.* at 1424 (internal citations omitted).

Defendants argue that the third *Moon* factor, which requires that the agreement explain the difference between arbitration and litigation, is impermissibly anti-arbitration under *Kindred*. (Defs.' Reply Br. 11-14.)[8] The Court disagrees. In *Kindred*, the Court found that an otherwise

---

[8] Recognizing that *Moon* is the controlling Third Circuit precedent and that *Moon* was decided after *Kindred*, Defendants argue that the issue of preemption is still open in this Circuit because

10

valid general power of attorney, without any limitation, was still ineffective to enter into an arbitration agreement without a specific authorization. Here, the New Jersey courts are simply ensuring that mutual assent—a requirement of any valid agreement—exists when a party waives his or her rights, including when agreeing to arbitration. *Atalese*, 99 A.3d at 313-14. Unlike the requirement at issue in *Kindred*, New Jersey's requirement goes to a more fundamental question of contract formation. *Id.* at 313 ("The requirement that a contractual provision be sufficiently clear to place a consumer on notice that he or she is waiving a constitutional or statutory right is not specific to arbitration provisions. Rather, under New Jersey law, any contractual waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously to its terms.") (internal quotation omitted) (collecting cases). "Arbitration clauses—and other contractual clauses—will pass muster when phrased in plain language that is understandable to the reasonable consumer." *Id.* at 314. The Court, accordingly, finds that the New Jersey requirement is not preempted by the FAA and will next consider whether the arbitration provision covers Plaintiffs' statutory claims.

The Silva Agreement provides that claims "arising out of or related to the relationship of the parties, this Agreement, any related agreement between the parties, and/or any specification, standard operating procedure of Coverall" must be submitted to arbitration. (Silva Agreement ¶ 21 (A).) This language limits its scope to the relationship and agreements between the parties and is silent as to the parties' statutory rights. *See Espinal*, 2018 WL 2278106, at *6-9. As discussed above, New Jersey contract law requires that all waiver of rights clauses must clearly and unambiguously express in plain language that a party is waiving its rights. In the case of

---

the parties in *Moon* did not argue, and the Court did not analyze, whether the FAA preempts New Jersey's requirement.

11

arbitration, this language, for instance, might explain that the plaintiff is giving up her right to bring a claim in court. The Silva Agreement does not provide any plain language explanation of the purpose of this clause or explain that Silva was relinquishing certain rights by signing the agreement.[9] The Court, consequently, finds that the Silva Agreement did not adequately put Plaintiff on notice that she was waiving her statutory rights. Defendants' motion as to Silva, accordingly, is denied.

---

[9] Defendants argue, in response to Plaintiffs' argument that the agreement is unconscionable, that Plaintiffs received FTC disclosure documents "about two weeks before they signed their Franchise Agreements" and the disclosures explain the consequences of the arbitration clause. The disclosure documents, which Defendants do not allege were read or signed by Plaintiffs, read "THE FRANCHISE AGREEMENT REQUIRES THAT ALL DISAGREEMENTS BE RESOLVED BY BINDING ARBITRATION AND NOT IN A COURT OF LAW. THIS MEANS THAT YOU AGREE YOU ARE NOT ELIGIBLE FOR TRIAL BY JURY IN A COURT OF LAW AND YOU FURTHER WAIVE THE RIGHT TO PROCEED AS A CLASS ACTION." (Defs.' Reply Br. 8 (citing Landolfi Decl. ¶¶ 4-5 Ex. A.)) First, the Court notes that there is no indication this document was signed or otherwise acknowledged. Second, even if it were, the Franchise Agreement itself expressly disclaims any representation made in another document:

> This is the full agreement of the parties. Any matter which is not actually written down and included in this document is not a term of this Agreement. To avoid any later misunderstanding about the exact terms of the Agreement, each Party affirms, by signing this Agreement, that it has not relied on any comment, promise, or representation not actually included in this Agreement. By signing this Agreement, the parties mutually agree that no evidence shall be admitted in any proceeding as to the existence of any term or promise claimed to be a part of the Agreement unless that term is explicitly stated within the Agreement. *DO NOT SIGN THIS AGREEMENT IF YOU ARE RELYING UPON ANY REPRESENTATION OR PROMISE NOT STATED IN THIS AGREEMENT.*

(Silva Agreement ¶ 24 (emphasis in original).) Defendants, the drafters of the document, cannot rely on strict language when it benefits them yet also ask the Court to consider extraneous documents provided to Plaintiffs, in direct contravention of the contractual language, to cure the deficiencies in their arbitration provision.

2. **Richardson Agreement**

The Richardson Agreement contains a similar reference to the AAA rules (Richardson Agreement ¶ 26(A), ECF No. 12-4), which is insufficient for the reasons discussed above. In addition, however, the Richardson Agreement also contains the following provision:

> Except as otherwise provided in this Agreement, all controversies, disputes or claims . . . arising out of or related to this Agreement or the validity of this Agreement or any provision thereof (including this arbitration agreement, the *validity and scope of which Coverall and Franchisee acknowledge and agree is to be determined by an arbitrator, not a court*), . . . shall be submitted promptly for binding arbitration.

(Richardson Agreement ¶ 26(A) (emphasis added).)

The Richardson agreement, therefore, contains language delegating the issue of arbitrability to the arbitrator, not a court. Plaintiffs argue, however, that the provision is unconscionable. (Pls.' Opp'n Br. 12-25.) Arbitration provisions "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, *or unconscionability*.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (emphasis added) (quoting *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). "The defense of unconscionability, specifically, calls for a fact-sensitive analysis in each case." *Delta Funding Corp. v. Harris*, 912 A.2d 104, 111 (N.J. 2006). "Courts have generally recognized that the doctrine of unconscionability involves both 'procedural' and 'substantive' elements." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003) (citations omitted). Procedural unconscionability "is generally satisfied if the agreement constitutes a contract of adhesion." *Id.* Substantive unconscionability "refers to terms that unreasonably favor one party to which the disfavored party does not truly assent." *Id.* "Courts generally have applied a sliding-scale approach to determine overall unconscionability,

considering the relative levels of both procedural and substantive unconscionability." *Delta*, 912 A.2d at 111 (citations omitted).

Any unconscionability challenge to an arbitration provision with a delegation clause must be limited to the delegation clause itself. *See Rent-A-Center W.*, 561 U.S. at 73. This is because, if the delegation clause is valid, a challenge to the broader arbitration agreement is an issue for the arbitrator to decide. *Id.* at 72. Here, Richardson argues that the delegation clause is both procedurally and substantively unconscionable.

### a. Procedural Unconscionability

Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). Richardson argues that the delegation clause is procedurally unconscionable because: (1) it was within a contract of adhesion; (2) the delegation clause was obscurely buried in the arbitration agreement; and (3) her relative lack of sophistication left her with inferior bargaining power under the pressure of economic compulsion. (Pls.' Opp'n Br. 18-22.) Defendants respond that these are attacks on the broader arbitration provision, not the delegation clause, and, in any event, the arguments fail because: (1) Richardson was not under compulsion to buy the franchise; (2) the print of the Agreement was the same size and format; and (3) Plaintiffs received the disclosure document advising them that they waive the right to a jury trial two weeks before signing the Franchise Agreements. (Defs.' Reply Br. 4, 7-8.)

The Court does not find the delegation clause to be procedurally unconscionable. A clause is not procedurally unconscionable simply because it does not print the arbitration provision more prominently than other provisions. *Green Tree Fin. Corp.*, 183 F.3d at 182. While the Court is

14

sympathetic to Richardson's argument that the parties were of unequal bargaining power, she "desperately needed a job," and that the "degree of economic compulsion" motivating her to accept the delegation clause was strong (Pls.' Opp'n Br. 19), considering these issues in light of all the other arguments, the Court is not persuaded that the agreement is procedurally unconscionable.

      b.      <u>Substantive Unconscionability</u>

Richardson also argues that the clause is substantively unconscionable because: (1) it contains a cost-splitting provision which would have a "chilling effect" on someone of modest means contemplating an action; and (2) it requires the losing party to pay the prevailing party's attorney's fees which would deter the exercise of rights because someone contemplating a claim could be forced to incur thousands of dollars in the other side's fees just to to arbitrate arbitrability. (*Id.* at 22-25.)

Defendants respond that Richardson cannot establish substantive unconscionability because cost-splitting and attorney's fees provisions are permitted by New Jersey law and cost-splitting provisions are a part of the AAA rules. (Defs.' Reply Br. 9-10.) These issues, however, with the exception of the cost-splitting provision, are arguments about the arbitration provision generally—not the delegation clause. New Jersey law clearly permits cost-splitting and attorney's fees provisions in arbitration agreements. *See N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 848-49 (N.J. 1999). As such, the Court cannot find that the delegation clause is substantively unconscionable.

The Court, therefore, finds the delegation clause to be valid, with sufficiently clear language to establish that the parties intended an arbitrator decide the issue of arbitrability. The Court, however, limits this delegation of arbitrability to the dispute between Richardson and Sujol. In connection with the argument that no valid agreement exists because of the lack of a signature

15

from CNA, Defendants argue that only Sujol is a party to the Agreement. The Court found the argument persuasive with respect to the validity issue, and also finds the argument relevant here. The Richardson Agreement specifically provides that "Franchisee and Coverall agree that arbitration shall be conducted on an individual, not a class wide basis, and that *only Coverall* (and its officers, directors, agents, and/or employees) *and Franchisee* (and Franchisee's owners, officers, directors and/or guarantors) *may be parties to any arbitration proceeding.*" (Richardson Agreement ¶ 26(B) (emphasis added).) As Defendants are the drafters of the Agreement, and the proponents of the argument that "Coverall" means "Sujol" only, the Court finds that the delegation of arbitrability is limited to Sujol. As to Richardson's claims against Coverall, therefore, the Court will determine the scope of the arbitration agreement, and, as CNA is not a party, or third party beneficiary, of the arbitration agreement, the Court finds that Richardson's claims against CNA are not subject to arbitration.

Defendants argue that CNA is a "third party beneficiary" of the agreement and can therefore compel arbitration even as a non-signatory. (Defs.' Moving Br. 9-12.) "Generally, arbitration agreements are enforceable only by signatories." *Jairett v. First Montauk Sec. Corp.*, 153 F. Supp. 2d 562, 581 (E.D. Pa. 2001) (citing *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1296 (3d Cir. 1996). Notwithstanding this general rule, however, a non-signatory may be able to compel arbitration under traditional principles of contract and agency law. *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001). Under New Jersey law, the parties' intent is the key factor in determining whether a party is a third-party beneficiary to a contract. *Kanoff v. Better Life Renting Corp.*, No. 03-2363, 2008 WL 442145, at *5 (D.N.J. Feb. 14, 2008). "Whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent,

gleaned from reading the contract as a whole in light of the circumstances under which it was entered." *Shadowbox Pictures, LLC v. Glob. Enters., Inc.*, No. 05-2284, 2006 WL 120030, at *8 (E.D. Pa. Jan. 11, 2006) (citing *Jones v. Aetna Cas. & Sur. Co.*, 33 Cal. Rptr. 2d 291, 296 (Cal. Ct. App. 1994)); *see also Mut. Benefit Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 866-67 (D.N.J. 1992) (The contract must "be made for the benefit of said third party within the intent and contemplation of the contracting parties. Unless such a conclusion can be derived from the contract or surrounding facts, a third party has no right of action under that contract despite the fact that he may derive an incidental benefit from its performance.").

In support of their argument that CNA is a third party beneficiary, Defendants argue that the Agreements recognize that Sujol and CNA are parties to a Master Franchise Agreement. (Defs.' Moving Br. 11-12.) This, however, is irrelevant to whether Plaintiffs and Sujol intended CNA to be a beneficiary of their contract. Next, Defendants argue that Plaintiffs' allegations target both Sujol and CNA without distinction, so that the claims are inevitably intertwined. (Defs.' Moving Br. 11.) This, again, however, is immaterial to the third-party beneficiary analysis. Finally, Defendants point to several places where the Agreement "references . . . CNA by name." (*Id.*) For example, Defendants point to provisions that explain Coverall marks are the property of CNA, that CNA licenses the use of its name and mark, and that Sujol is sub-licensing the use of CNA's trademarks and system. (*Id.* at 11-12.) These references, however, are not the type of references that would evidence intent to make CNA a third-party beneficiary of the contract. *See, e.g., Torres v. Simpatico, Inc.*, No. 12-2373, 2014 WL 409157, at *5 (E.D. Mo. Feb. 3, 2014) (finding third party beneficiary status where, among other provisions benefiting third party non-signatories, the portion of the agreement that contained the arbitration provision recited that "it is intended to benefit and bind certain third party non-signatories"). There is no clear evidence here

17

that would allow the Court to find that the parties intended CNA to be a third-party beneficiary of the agreement. Further, even if CNA were a third-party beneficiary, the strict contractual language limiting the ability of any third party to participate in arbitration undermines Defendants' argument that CNA be permitted to compel arbitration.[10] The Court, therefore, compels arbitration between Richardson and Sujol on the issue of whether the statutory dispute is covered by the arbitration provision, and stays this matter pending the outcome of the arbitration.

### IV. Conclusion

For the reasons set forth above, Defendants' Joint Motion to Stay this Action Pending Mediation and Arbitration is granted in part and denied in part. An order consistent with this Opinion will be entered.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

**Dated:** September 27, 2018

---

[10] To the extent this motion also requested that the Court compel mediation, Defendants have not set forth any case law that would suggest that is an appropriate remedy in this situation or at this time. To the extent that Defendants believe Plaintiffs breached the Agreements by failing to first submit the dispute to mediation, such a claim can form the basis for a breach of contract claim, but such a claim is not asserted (presumably because Defendants believe such a dispute must be submitted to an arbitrator). Further, if it was asserted, there is no evidence that the remedy of specific performance on a breach of contract claim is appropriate in this context. Unlike arbitration, which enjoys a heightened and deferential status pursuant to the FAA, the parties have not cited any authority or cases that support compelling mediation.